# Exhibit I-1



DEAN L. JACOBS, and MARCIELLE S. JACOBS, Plaintiffs, v. OCWEN LOAN SERVICING, LLC, FEDERAL HOME LOAN MORTGAGE CORPORATION, VADEN LAW FIRM, LLC, LAWRENCE E. CASTLE, in his individual capacity, MEGASTAR FINANCIAL CORP., YVONNE G. SMITH, GORDON D. SMITH, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. "MERS", MERSCORP HOLDINGS, INC., Defendants.

Civil Action No. 13-cv-02518-REB-BNB

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

2014 U.S. Dist. LEXIS 110053

June 16, 2014, Decided
June 16, 2014, Filed

**SUBSEQUENT HISTORY:** Adopted by, Objection overruled by, Dismissed by, in part Jacobs v. Ocwen Loan Servicing, LLC, 2014 U.S. Dist. LEXIS 109705 (D. Colo., Aug. 7, 2014)

**PRIOR HISTORY:** Jacobs v. Ocwen Loan Servicing, LLC, 2013 U.S. Dist. LEXIS 188480 (D. Colo., Dec. 2, 2013)

**COUNSEL:** [*1] Dean L. Jacobs, Plaintiff, Pro se, Byers, CO.

Marcielle S. Jacobs, Plaintiff, Pro se, Byers, CO.

For Ocwen Loan Servicing, LLC, Federal Home Loan Mortgage Corporation, Mortgage Electronic Registration Systems, Inc. "MERS", MERSCORP Holdings, Inc., Defendants: Amy M. Leitch, Mark Cameron Willis, Kutak Rock, LLP-Denver, Denver, CO.

For Vaden Law Firm, LLC, Defendant: Amanda K. Slater, Nancy Lin Cohen, MiletichCohen, PC, Denver, CO.

For Lawrence (I) E. Castle, in his individual capacity, Defendant: Phillip A. Vaglica, Castle Law Group, LLC, Denver, CO.

For Megastar Financial Corp., Defendant: Alan E. Karsh, Ivan Moore Call, Karsh, Fulton, Gabler & Joseph, PC, Denver, CO.

For Yvonne G. Smith, Gordon D. Smith, Defendants: Ivan Moore Call, Karsh, Fulton, Gabler & Joseph, PC, Denver, CO.

**JUDGES:** Boyd N. Boland, United States Magistrate Judge.

**OPINION BY:** Boyd N. Boland

**OPINION**

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This matter arises on the following motions (the "Motions"):

(1) **Defendant Vaden Law Firm LLC's Motion to Dismiss Pursuant to Fed.R.Civ.P. Rules 12(b)(1),**

12(b)(5), 12(b)(6), and 41(b) [Doc. #45, filed 11/15/2013] (the "Vaden Motion"); and

(2) **The Ocwen Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [*2] Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6)** [Doc. #67, filed 12/12/2013] (the "Ocwen Motion") filed by defendants Ocwen Loan Servicing, LLC ("Ocwen"); Federal Home Loan Mortgage Corporation ("FHLMC")[1]; Mortgage Electronic Registration Systems, Inc. ("MERS"), and MERSCORP Holdings, Inc. ("MERSCORP") (collectively the "Ocwen defendants"). I respectfully RECOMMEND that the Motions be GRANTED.

> 1  The Ocwen defendants refer to FHLMC as "Freddie."

## I. STANDARD OF REVIEW

The plaintiffs are proceeding *pro se*, and I must liberally construe their pleadings. Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The plaintiffs filed their Amended Complaint on October 23, 2013 [Doc. #24]. The Amended Complaint asserts eleven claims for relief arising out of the foreclosure of their property. The defendants seeks dismissal of the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(1).[2]

> 2  The caption of the Vaden Motion states that Vaden also seeks dismissal pursuant to Rule 12(b)(5), but Vaden does [*3] not make any arguments pursuant to that rule.

In ruling on a motion to dismiss under Rule 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493, 106 S. Ct. 2034, 90 L. Ed. 2d 480 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).

A motion to dismiss under Rule 12(b)(1) may present a facial challenge or a factual challenge to subject matter jurisdiction. Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). A facial challenge tests the sufficiency of the complaint. In reviewing a facial a challenge, the allegations of the complaint must be accepted as true. A factual challenge looks to the facts upon [*4] which subject matter jurisdiction depends. "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." Id.

## II. BACKGROUND FACTS[3]

> 3  Under Holt, I may consider documents insofar as I am determining subject matter jurisdiction. In addition, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. This allows the court to take judicial notice of its own files and records, as well as facts which are a matter of public record. However, the documents may only be considered to show their contents, not to prove the truth of matters asserted therein." Tal v. Hogan, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) (internal quotations and citations omitted).

1. On or about June 28, 2006, the plaintiffs obtained a mortgage loan from Taylor, Bean & Whitaker Mortgage Corporation ("TBW") in the principal amount of $370,000.00 (the "Mortgage Loan"). To evidence [*5] the Mortgage Loan, Plaintiffs executed a Note, dated June 28, 2003, in the principal amount of $370,000.00 in favor of TBW and its successors and assigns (the "Note"). *Ocwen Motion*, Ex. A; Ex. CC, p. 1.

2. Pursuant to the terms of the Note, the plaintiffs promised to repay the Mortgage Loan by making a principal and interest payment each month, and the plaintiffs' failure to pay the full amount of each payment constitutes a "default" under the express terms of the Note. Id. at Ex. A, ¶¶ 1, 3, and 6(B). Additionally, the

plaintiffs agreed that TBW could transfer the Note and that any party who took the Note by transfer would be the "Note Holder" entitled to enforce it. Id. at ¶ 1. TBW indorsed the Note in blank. Id. at p. 3.

3. As security for the Loan, the plaintiffs executed a Deed of Trust dated June 28, 2006, encumbering property known as 305 Rolling Hills Place, Parker, Colorado 80138 (the "Property") for the benefit of MERS, as nominee for TBW and its successors and assigns, and the successors and assigns of MERS. Id. at Ex. B; Ex. CC, p. 1.

4. As a result of the plaintiffs' default under the Note and Deed of Trust, Ocwen commenced non-judicial foreclosure proceedings by submitting [*6] a "Notice of Election and Demand for Sale" to the Elbert County Public Trustee (the "Trustee") on or about July 30, 2010. Id. at Ex. C; Ex. CC, p. 1.

5. On August 18, 2010, and in connection with its Trustee foreclosure, "Ocwen Loan Servicing, LLC, as Servicer for CSFB"[4] filed a verified "Motion for Order Authorizing Sale" with the Elbert County District Court, Case No. 2010CV245 (the "Rule 120 Proceeding"), to obtain an order authorizing the Trustee to sell the Property. Id. at Ex. D.

  4 CSFB stands for Credit Suisse First Boston. Id. at Ex. CC, p. 1.

6. On September 13, 2010, the Plaintiffs filed a "Response to Motion for Order Authorizing Sale" in the Rule 120 Proceeding, challenging the standing of Ocwen to foreclose. Id. at Ex. E.

7. On November 22, 2010, the Elbert County District Court held a hearing in the Rule 120 Proceeding (the "Rule 120 Hearing"). Id. At the Rule 120 Hearing, counsel produced the original Note, indorsed in blank, and the original Deed of Trust. Id. at 2:18; 3:7-11; 6:11-12; 14:15-21; 16:6-12. The Elbert County District Court issued an Order Authorizing Sale on November 22, 2010, and ordered that the original Note and Deed of Trust be lodged with the Trustee to [*7] complete the foreclosure sale. Id. at Ex. F.

8. On December 22, 2010, and pursuant to C.R.S. § 38-38-110 and the Order Authorizing Sale, the Public Trustee sold the Property to Ocwen, as Servicer for CSFB, at public sale. Id. at Ex. G.

9. On January 18, 2011, the Public Trustee issued its Confirmation Deed vesting free and clear title to the Property in Ocwen, as Servicer for CSFB. Id. at Ex. H.

10. On January 25, 2011, Ocwen executed a Special Warranty Deed conveying the property to FHLMC, which was recorded on January 31, 2011, at Reception No. 515883. Id. at Ex. K.

11. According to the Colorado Court of Appeals, Ocwen realized that it had erroneously brought the action under "Ocwen as servicer for CSFB." On February 4, 2011, Ocwen, "as Servicer for CSFB," executed a Quitclaim Deed conveying the Property to "Ocwen Loan Servicing, LLC." Id. at Ex. J; Ex. X, p. 1; Ex. CC, p. 1, n. 1 and p. 2.

12. On February 4, 2011, the Court entered its Order Approving Sale. Id. at Ex. L.

13. On January 7, 2011, the plaintiffs filed in this court a "Complaint and Jury Demand with Motion for Declaratory Judgment Voiding Foreclosure Sale and Action to Quiet Title" naming 18 defendants, including Ocwen and [*8] Vaden. Civil Action No. 11-cv-00042-CMA-KLM, Doc. #1 (the "Federal Quiet Title Complaint"). The plaintiffs raised the issue of standing and alleged that they were denied due process in the Rule 120 Proceeding. The plaintiffs also alleged violations of the Fair Debt collections Practices Act ("FDCPA"); Colorado Fair Debt Collection Practices Act ("CFDCPA"); Colorado Consumer Protection Act ("CCPA"); and infliction of emotional distress. Id. On September 20, 2011, the claims against were dismissed without prejudice. Id. at Doc. #89.

14. On March 14, 2011, and pursuant to C.R.S. § 13-40-110, FHLMC commenced an unlawful detainer action against the plaintiffs to gain possession of the Property by filing a "Verified Complaint in Unlawful Detainer" (the "Initial FED Action") in the County Court for Elbert County, Colorado (the "County Court"), Case No. 2011C000185. *Ocwen Motion*, Ex. M.

15. On March 16, 2011, the plaintiffs filed their Answer and Counterclaims in the Initial FED Action. Id. at Ex. N. The plaintiffs alleged that FHLMC was not entitled to possession of the Property because the plaintiffs were denied due process in the Rule 120 Proceeding. Id. at ¶ 1. The plaintiffs also asserted [*9] counterclaims which included violations of the FDCPA,

violations of the CCPA, wrongful foreclosure, intentional infliction of emotional distress, and violations of substantive and procedural due process protections guaranteed under the United States Constitution. Id. at ¶ 2(a), (d), (e), (f), and (h).

16. On March 25, 2011, the County Court bifurcated the plaintiffs' counterclaims from FHLMC's unlawful detainer claim and conducted an evidentiary possession hearing on FHLMC's unlawful detainer claim. After the hearing, the County Court entered an order granting judgment for possession of the Property to FHLMC on its unlawful detainer claim (the "Initial FED Judgment") and set a jury trial on the counterclaims. Id. at Ex. O, 25:16-17; 27:20-28:10.

17. On March 30, 2011, and pursuant to C.R.C.P. 411, the plaintiffs appealed the Initial FED Judgment to the Elbert County District Court in Case No. 2011CV89 (the "Initial FED Appeal.")[5]

> 5 C.R.C.P. 411 provides that, upon perfection of an appeal from a county court to a district court, the "county court shall discontinue all further proceedings and recall any execution issued." The defendants assert that because the plaintiffs perfected their [*10] appeal of the Initial FED Judgment, the County Court in the Initial FED Action could not (and did not) issue a writ of restitution in favor of FHLMC. Ocwen Motion, p. 9, n. 3.

18. On July 1, 2011, the County Court entered an order granting FHLMC's motion to dismiss the plaintiffs' counterclaims. The court dismissed the counterclaims with prejudice (the "Counterclaim Dismissal Order"). Id. at Ex. R.

19. On July 1, 2011, the plaintiffs appealed the Counterclaim Dismissal Order and filed a motion for reconsideration of the Counterclaim Dismissal Order. On September 13, 2012, the County Court vacated the plaintiffs' Notice of Appeal for failure to prosecute the appeal and denied the motion for reconsideration as "not well-founded." The Initial FED Action was closed. Id. at Ex. S.

20. On October 22, 2012, the Elbert County District Court entered its Order dismissing the Initial FED Appeal. Id. at Ex. P.

21. Because no writ of restitution was issued in connection with the Initial FED Action, a second unlawful detainer action was commenced against plaintiffs on August 8, 2012, in the County Court, Case No. 2012C365 (the "Second FED Action"). Id. at Ex. T.

22. On August 23, 2012, a second possession [*11] hearing was conducted on FHLMC's claim for possession of its Property in the Second FED Action. The County Court found that FHLMC was entitled to possession of the Property. The County Court entered judgment from the bench in favor of FHLMC on its unlawful detainer claim and granted FHLMC "judgment for recovery of possession of the [Property]" (the "Second FED Judgment"). Id. at p. 24:6-24.

23. A Writ of Restitution was issued on November 14, 2012. Id. at Ex. U

24. FHLMC sold the Property to Defendants Yvonne G. Smith and Gordon D. Smith. Amended Complaint, p. 23, ¶ 2.[6]

> 6 The Amended Complaint is not consecutively paginated. Therefore, I cite to the page numbers of the Amended Complaint as they are assigned by the court's docketing system.

25. On July 8, 2011, shortly after this court dismissed the Federal Court Quiet Title Complaint and while the Initial FED Action was pending, the plaintiffs initiated a quiet title action in state court by filing a complaint Under Rule 105 (the "State Quiet Title Complaint") in the State District Court, Case No. 2011CV000171. Ocwen Motion, Ex. W.

26. In the State Quiet Title Complaint, the plaintiffs alleged that title to the Property should be quieted [*12] in the name of the plaintiffs, again asserting that the Rule 120 Proceedings were unconstitutional, that Ocwen was not a real party in interest, and that Ocwen was unable to prove that it was entitled to foreclose. Id. at ¶¶ 14, 26.

27. Ocwen, FHLMC, and another defendant moved to dismiss the case. The district court denied their motion. Id. at Ex. CC, p. 2.

28. On February 10, 2012, the plaintiffs filed a Motion for Summary Judgment, arguing that the foreclosure was void because Ocwen "as servicer for CSFB" (as opposed to Ocwen Loan Servicing, LLC) was

not the real party in interest and therefore did not have standing to foreclose. On April 3, 2012, the District Court denied the plaintiffs' Motion for Summary Judgment. Id. at Ex. X.

29. On May 11, 2012, Ocwen and FHLMC filed a Motion for Summary Judgment. In their Response to Summary Judgment, the plaintiffs argued that the defendants had previously admitted Ocwen erroneously foreclosed on the Property as servicer for CSFB rather than on its own behalf, and further argued that Ocwen was not the real party in interest to foreclose. The plaintiffs also requested that the court take judicial notice of documents that allegedly showed the [*13] Special Warranty Deed and the Quitclaim Deed were forged. Id. at Ex. Y.

30. On July 26, 2012, the Sate District Court granted Ocwen and FHLMC's Motion for Summary Judgment. The court stated:

> Despite Ocwen's miscaptioning of the underlying case, it has carried its burden to show that it possessed authority to foreclose on the Property. The Court determined that "Ocwen as Servicer for CSFB" was the holder of the note and a real party in interest in the underlying case. The Court made this decision after Ocwen presented the original note, indorsed in blank. Ocwen continues to hold that note it presented at the November 22, 2010 hearing. Regardless of whether Ocwen initiated the action "as servicer for CSFB" or on its own behalf, as a matter of law the presentation of the original note instills in Ocwen the authority to foreclose on the home. Ocwen has demonstrated there is no issue of material fact as to its authority to foreclose on the Property. Plaintiff has provided no evidence that would indicate Ocwen's possession of the note is invalid. Plaintiffs have failed to carry their burden to establish an issue of material fact regarding Ocwen's authority to foreclose on the Property.

Id. [*14] at Ex. Z p. 4.

31. The court further held that the foreclosure sale was valid and enforceable, that Ocwen corrected title to the Property and clarified the intentions of the interested parties to the Property through the Quitclaim Deed, and that Ocwen transferred title in fee simple to the Property to FHLMC by executing the Special Warranty Deed. Id.

32. On August 10, 2012, the plaintiffs filed a Motion for Reconsideration arguing, among other things, that Ocwen was not a holder of the Note because it did not have possession of the Note at the time of the foreclosure proceedings, and because the plaintiffs believed the blank indorsement of the Note by Erla Carter Shaw was not authentic. Id. at Ex. AA. The State District Court denied the motion. Id. at Ex. T, 22:16-23; Ex. BB.

33. The plaintiffs appealed the State District Court's decision to the Colorado Court of Appeals, Case No. 12CA2048. On October 10, 2013, the Colorado Court of Appeals issued its opinion and judgment affirming the State District Court's summary judgment in favor of Ocwen and FHLMC. Id. at Ex. CC. The appellate court stated:

> Borrowers first contend that the foreclosure sale was void ab initio because Ocwen, as servicer [*15] for CSFB, prosecuted the foreclosure but was not the real party in interest. We are not persuaded.
>
> C.R.C.P. 17(a) provides that every action must be prosecuted in the name of the real party in interest. "The real party in interest is that party who, by virtue of substantive law, has the right to invoke the aid of the court in order to vindicate the legal interest in question." Goodwin v. Dist. Court, 779 P.2d 837, 843 (Colo. 1989).
>
> In the context of a foreclosure sale, a "holder of an evidence of debt" is the party entitled to foreclose. § 38-38-101, C.R.S. 2013. And an entity in possession of a negotiable instrument evidencing a debt, indorsed in blank, is presumed to be a "holder of an evidence of debt." § 38-38-100.3(10)(c), C.R.S. 2013.
>
> Borrowers do not dispute that Ocwen

was a real party in interest with the authority to foreclose. Rather, they argue only that Ocwen was not entitled to foreclose as an agent for CSFB.

We agree with the district court, however, that whether Ocwen initiated the action as an agent for CSFB or on its own behalf is immaterial. Ocwen produced the original promissory note -- indorsed in blank -- and the original deed of trust at the Rule 120 proceeding, thereby [*16] establishing itself as a holder of an evidence of debt under subsection 38-38-100.3(10)(c). Ocwen therefore had the authority to foreclose and did foreclose.

\* \* \*

Because Ocwen presented evidence that it was entitled to foreclose, did foreclose, and it is undisputed that borrowers were in default, we decline to set aside the foreclosure.

Id. at pp. 5-6.

34. The Court of Appeals also found that the plaintiffs' evidence regarding the alleged unauthentic signature was immaterial because, among other things, it would at most affect Ocwen's status as a holder in due course and not its status as a "holder of evidence of debt" entitled to foreclose under Colorado law. Id. at pp. 9-14. Finally, the Court of Appeals found that the plaintiffs had not been deprived of their due process rights. Id. at pp. 16-17.

35. The defendant assert, and the plaintiffs do not dispute, that on November 21, 2013, the plaintiffs filed a Petition for Writ of Certiorari ("Certiorari Petition") with the Colorado Supreme Court. On December 5, 2013, Ocwen and FHLMC filed their opposition to Certiorari Petition. Id. at p. 14, ¶ 42; *Plaintiffs' Response to the Ocwen Defendants' Motion to Dismiss Plaintiffs' Amended Complaint* [*17] *Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)* [Doc. #76] (the "Ocwen Response"), p. 10, second full paragraph.

The Amended Complaint is not a model of clarity. The plaintiffs assert eleven claims for relief:

Claim One asserts that Ocwen, FHLMC, and Vaden's actions relating to the foreclosure process violated the Due Process Clause pursuant to 42 U.S.C. § 1983. Claim One also alleges that "Rule 120 and Colo. Rev. Stat. § 38-38-101 et seq." violate the Due Process Clause because they lower the burden of proof requirement "from a clear and convincing standard to a reasonable probability that default has occurred standard."

Claim Two asserts that "Rule 120; C.R.S. § 38-38-100.3(10), (20) and C.R.S. § 38-38-101(1)(b)(II)" violate the Equal Protection Clause of the U.S. Constitution because "they differentiate between Colorado citizens whose real estate purchase or refinance loans were obtained from financial institutions lenders such as the Defendant and that of private nonfinancial institution lenders." Claim Two is also asserted against Ocwen and Vaden for denial of equal protection rights. The basis for the equal protection claims against Ocwen and Vaden is not entirely clear, but [*18] appears to be based on Vaden's alleged misrepresentation at the Rule 120 Hearing of the amount owed by the plaintiffs.

Claim Three asserts a claim for civil conspiracy pursuant to 42 U.S.C. § 1983 against Castle, Ocwen, FHLMC, and Vaden for acting in concert to foreclose on the Property. The allegations in this claim include fabrication of documents, forgeries, and Ocwen's clandestine foreclosure on behalf of FHLMC.

Claim Four asserts fraud against Ocwen, FHLMC, and Vaden for actions related to the foreclosure.

Claim Five asserts violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., against Ocwen and Vaden. The actions at issue in this claim all relate to the foreclosure and include misrepresentations at the Rule 120 Hearing regarding the amount owed by the plaintiffs; letters sent by Ocwen to the plaintiffs in 2009 and 2010; and a letter sent by Vaden dated July 20, 2010.

Claim Six asserts violations of the Colorado Fair Debt Collections Practices Act ("CFDCPA"), Colo. Rev. Stat. § 12-14-101, et seq., against Ocwen and Vaden for actions related to the foreclosure process including misrepresentations at the Rule 120 Hearing of the amount owed by the [*19] plaintiffs and forgeries and fabrications involving the Note.

Claim Seven asserts violations of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-101, et seq., against Ocwen, FHLMC, MERS, and Vaden. The plaintiffs refer to forgery of the Note, of the Quitclaim Deed and Special Warranty Deed, and misrepresentation at the Rule 120 Hearing of the amount owed by the plaintiffs.

Claim Eight asserts negligence per se against Ocwen, FHLMC, MERS, Megastar, and Vaden. The claim challenges the standing of Ocwen to foreclose on the Property and contains allegations regarding the Quitclaim Deed executed by Ocwen Loan Servicing "as Servicer for CSFB" to Ocwen Loan Servicing, LLC, and the subsequent Special Warranty Deed conveying the property to FHLMC.

Claim Nine asserts Intentional Infliction of Emotional Distress against Ocwen, FHLMC, MERS, Megastar, and Vaden based on the foreclosure of the Property.

Claim Ten asserts negligence against Ocwen, FHLMC, MERS, Megastar, Yvonne Smith, and Gordon Smith based on the foreclosure and subsequent conveyance of the Property to FHLMC.

Claim Eleven asserts violation of "Colo. Rev. Stat. §§ 38-35-109(3), 201 et seq. [*20] (Spurious Lien and Document)" against Ocwen, FHLMC, MERS, Megastar, and Vaden based on the foreclosure.

The plaintiffs claim that the defendants' actions caused them to suffer "severe emotional distress which caused gastrointestinal pain; sleeplessness; diarrhea; panic attacks; depression; exacerbation of skin conditions due to stress resulting in lesions that bleed and an inability to sit, loss of consortium and continued embarrassment." They seek to void the foreclosure of the Property; declare the Mortgage Loan, Note, and Deed of Trust void and unenforceable; and declare "Rule 120; C.R.S. § 38-38-100.3(10), (20) and C.R.S. § 38-38-101(1)(b)(II) unconstitutional." The also seek an award of damages.[7]

> 7  Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

## III. ANALYSIS

### A. Younger Abstention Doctrine, Rooker-Feldman Doctrine, Res Judicata and Collateral Estoppel

The defendants argue that the plaintiffs' [*21] claims are barred by the doctrines of res judicata and collateral estoppel, the Younger abstention doctrine, and/or the Rooker-Feldman doctrine. *Ocwen Motion*, pp. 18-28; *Vader Motion*, pp. 4-8. Challenges pursuant to Rooker-Feldman and Younger are factual challenges to this court's subject matter jurisdiction. Under Holt, I do not presume the truth of the factual allegations of the pleadings. Instead, I have wide discretion to allow affidavits and other documents to resolve any disputed jurisdictional facts. Holt, 46 F.3d at 1003. Preclusion doctrines are not jurisdictional; they are affirmative defenses which are subject to waiver if not timely raised. Pittsburg County Rural Water Dist. No. 7 v. City of McAlester, 358 F.3d 694, 708 n. 4 (10th Cir. 2004).

### 1. Rooker-Feldman Doctrine

The Rooker-Feldman doctrine is derived from 28 U.S.C. § 1257 which provides that federal review of state court judgments can be obtained only in the United States Supreme Court. Exxon Mobil Corp. v. Saudi Basic Indus. Corp. 544 U.S. 280, 291, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). The Rooker-Feldman doctrine prohibits a United States district court from considering claims that have been adjudicated in state court and claims that are inextricably [*22] intertwined with the prior state-court judgment. Guttman v. G.T.S. Khalsa, 446 F.3d 1027, 1032 (10th Cir. 2006). The Rooker-Feldman doctrine "applies only to suits filed after state proceedings are final." Id. at 1032.

Here, the defendants assert, and the plaintiffs do not dispute, that after the Colorado Court of Appeals issued its opinion declining to set aside the foreclosure in the State Quiet Title Action, the plaintiffs filed a Petition for Writ of Certiorari ("Certiorari Petition") which is pending in the Colorado Supreme Court. Because the plaintiffs' challenges to the state foreclosure proceedings are not final, the Rooker-Feldman doctrine does not bar them.

On March 16, 2011, in the Initial FED Action, the plaintiffs asserted counterclaims against FHLMC for

violations of the FDCPA and the CCPA and Intentional Infliction of Emotional Distress. *Ocwen Motion*, Ex. N. The counterclaims arose out of the foreclosure. Id. at Ex. Q. The counterclaims were dismissed with prejudice by the County Court. Id. at Exs. R and S. The plaintiffs do not provide any evidence demonstrating that the counterclaims remain pending in the state court. Because the party seeking to invoke the court's jurisdiction [*23] bears the burden of establishing that subject matter jurisdiction exists, Henry v. Office of Thrift Supervision, 43 F.3d 507, 512 (10th Cir.1994), the Rooker-Feldman doctrine bars the allegations of Claim Seven that FHLMC violated the CCA during the foreclosure procedure and the allegations of Claim Nine that FHLMC caused Intentional Infliction of Emotional Distress during the foreclosure proceedings.[8]

> 8 Although violations of the FDCPA are asserted in Claim Five, it is brought only against Ocwen and Vader. Therefore, no part of Claim Five is barred by the Rooker-Feldman doctrine.

### 2. Younger Abstention Doctrine

The Tenth Circuit Court of Appeals has explained Younger abstention as follows:

> Under the Younger abstention doctrine, federal courts should not interfere with state court proceedings by granting equitable relief--such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings--when a state forum provides an adequate avenue for relief. Younger abstention is non-discretionary; the district court must abstain once the conditions are met, absent extraordinary circumstances. As [the] court stated in Amanatullah [v. State Bd. Of Medical Examiners, 187 F.3d 1160 (10th Cir. 1999)]:
>
> "A [*24] federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."

Weitzel v. Division of Occupational and Professional Licensing of the Dept. of Commerce of the State of Utah, 240 F.3d 871, 875 (2001) (internal citations omitted).

The plaintiffs' Petition for Writ of Certiorari arising out of the State Quiet Title Action is pending before the Colorado Supreme Court. Thus, there is an ongoing civil proceeding which provides an adequate forum to hear the plaintiffs' challenges to the foreclosure proceeding. "Actions that challenge the Rule 120 order and process are proceedings involving important state interests concerning title to real property located and determined by operation of state law." Beeler Properties, LLC, v. Lowe Enterprises Residential Investors, Civil Action No. 07-cv-00149-MSK-MJW, 2007 U.S. Dist. LEXIS 33434, 2007 WL 1346591 at *1 (D. Colo. May 7, 2007). [*25] See also Memphis Street, LLC v. Lowe Enterprise Residential Investors, LLC, 2007 U.S. Dist. LEXIS 35519, 2007 WL 1456067 (D. Colo. May 15, 2007).

The plaintiffs seek declaratory and injunctive relief "dismissing and voiding the foreclosure of Plaintiffs' property" and "declaring the Mortgage, Promissory Note and other related instruments . . . void and unenforceable." *Amended Complaint*, p. 27. The plaintiffs also challenge the constitutionality of Rule 120 and state foreclosure statutes.[9] Those claims should be dismissed without prejudice for lack of subject matter jurisdiction pursuant to the Younger abstention doctrine.

> 9 Rule 120 is incorporated by reference into the foreclosure statutes. C.R.S. §§ 38-38-105(2)(a) and (3). To the extent the plaintiffs challenge the constitutionality of Rule 120; §§ 38-38-100.3(10) and (20); and 38-38-101(1)(b)(II), C.R.S., the record does not contain any evidence that the plaintiffs filed a notice of constitutional question and served it on the state attorney general as required by Rule 5.1(a), Fed.R.Civ.P.

### 3. Res Judicata and Collateral Estoppel

Colorado preclusion law must be applied to determine whether the plaintiff's claims are barred by res judicata and/or collateral estoppel [*26] based on state court judgments. Migra v. Warren City School District Board of Education, 465 U.S. 75, 87, 104 S. Ct. 892, 79

L. Ed. 2d 56 (1984) (holding that the federal court must give to the state court judgment the same preclusive effect as would be given that judgment under law of state in which judgment was rendered). The Colorado Supreme Court has stated that it prefers the labels "claim preclusion" and "issue preclusion" over the traditional terms of *res judicata* and collateral estoppel "as res judicata is oftentimes used as an overarching label for both claim and issue preclusion" and "such usage may lead to confusion." Farmers High Line Canal & Reservoir Co. v. City of Golden, 975 P.2d 189, 196 n.11 (Colo. 1999). Accordingly, I analyze the motions using the terms claim preclusion and issue preclusion.

Issue preclusion bars the relitigation of an issue finally decided in a prior action. Sunny Acres Villa, Inc. v. Cooper, 25 P.3d 44, 47 (Colo. 2001). Issue preclusion will bar relitigation of an issue only if:

> (1) the issue sought to be precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party [*27] to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

Sunny Acres, 25 P.3d at 47. "The burden of establishing these elements rests with the party seeking preclusion." BeBo Construction Co. v. Mattox & O'Brien, P.C., 990 P.2d 78, 85 (Colo. 1999).

To satisfy the final judgment requirement of issue preclusion, "a judgment must be 'sufficiently firm' in the sense that it was not tentative, the parties had an opportunity to be heard, and there was an opportunity for review." Carpenter v. Young, 773 P.2d 561, 568 (Colo. 1989). "Carpenter requires an opportunity for review before a judgment can be considered final for purposes of issue preclusion. Pronouncing a judgment to be final while it is still pending on appeal would negate that requirement." Rantz v. Kaufman, 109 P.3d 132, 141 (Colo. 2005).

Claim preclusion "operates as a bar to a second action on the same claim as one litigated in a prior proceeding when there is a final judgment, identity of subject matter, claims for relief, and parties to the action." City & County of Denver v. Block 173, 814 P.2d 824, 830 (Colo. 1991). [*28] Claim preclusion "not only bars issues actually decided, but also any issues that should have been raised in the first proceeding but were not." Id. The definition of a final judgment, as defined by the Colorado Supreme Court in Carpenter, applies to claim preclusion as well as issue preclusion, and may even be more stringent. Knox v. Lederle Laboratories, 4 F.3d 875, 880 (10th Cir. 1993).

The defendants have failed to meet their burden to establish the existence of a final judgment on any of the plaintiffs' claims. The motions should be denied insofar as they seek to apply issue and claim preclusion to bar the plaintiffs' claims.

**B. Claims One, Two, and Three: 42 U.S.C. § 1983**

Claims One, Two, and Three are brought under to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The defendants argue that the plaintiffs' [*29] section 1983 claims fail because they are barred by the statute of limitation. *Ocwen Motion*, p. 28; *Vaden Motion*, pp. 12-13. Actions asserted under 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose. Hunt v. Bennett, 17 F.3d 1263, 1265 (10th Cir. 1994). The appropriate statute of limitation for § 1983 actions arising in Colorado is two years. Id. at 1266; Colo. Rev. Stat. § 13-80-102. Federal law rather than state law determines when a cause of action accrues. See Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994). "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." Id. at 969.

"A civil rights action accrues when facts that would support a cause of action are or should be apparent." Fratus v. Deland, 49 F.3d 673, 675 (10th Cir. 1995).

"While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling [*30] the statute.[10] Statute of limitations questions may, therefore, be appropriately resolved on a Fed. R. Civ. P. 12(b) motion." Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) (internal citations omitted).

> 10 The plaintiffs do not establish a factual basis for tolling any of the statutes of limitation. Instead, they summarily state that plaintiff Marcielle Jacobs suffered a disability. *Plaintiffs' Response to Vaden Law Firm's Motion to Dismiss* [Doc. #61] (the "Vaden Response"), p. 12; *Ocwen Response*, pp. 9-10.

### 1. Claim One

In Claim One, the plaintiffs allege that defendants Castle, Ocwen, FHLMC, and Vaden violated the plaintiffs' due process rights. *Amended Complaint*, pp. 5-6. The plaintiffs do not provide any specific factual allegations regarding the actions or inactions of each defendant that violated their due process rights. Instead, they challenge the defendants' use of "the new lax foreclosure requirements" at the Rule 120 hearing, which occurred on November 22, 2010. Any challenges to the defendants' actions at the hearing would be barred after November 22, 2012. The plaintiffs did not initiate this case until September 16, 2013, when they filed their [*31] initial Complaint. To the extent Claim One challenges the defendants' actions at the Rule 120 hearing, the claim is barred by the statute of limitation.

Moreover, the plaintiffs' lack of specific factual allegations against each defendant results in a failure to state a plausible claim against them. "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations and citation omitted). If the complaint's allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." Id. (internal quotations and citation omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." Id. The plaintiffs essentially allege that the defendants pursued a foreclosure under the current state foreclosure law. That allegation, without more, is insufficient to state a plausible claim for violation of the plaintiffs' due process rights.

In addition, [*32] section 1983 limits liability to the actions of the government and its agents. Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1446-47 (10th Cir. 1995). The Amended Complaint does not contain any factual allegations to show that the defendants are agents of the State of Colorado.

### 2. Claim Two

In Claim Two, the plaintiffs allege that defendants Vaden and Ocwen violated their equal protection rights. *Amended Complaint*, pp. 7-8. The plaintiffs allege that at the Rule 120 Hearing, Vaden and Ocwen inflated the fees and interest owed by the plaintiffs Id. at p. 8. As stated above, any challenges to the defendants' actions at the Rule 120 Hearing are barred by the statute of limitation.

Additionally, "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) (quotations and citation omitted). The plaintiffs do not provide any specific factual allegations to show that Vaden and Oscwen are state actors under section 1983, or [*33] that their actions violated the Equal Protection Clause.

### 3. Claim Three

In Claim Three, the plaintiffs allege that defendants Castle, Ocwen, FHLMC, and Vaden conspired to deprive them of their property. The claim is titled as a civil conspiracy claim pursuant to 42 U.S.C. § 1983. *Amended Complaint*, pp. 9-10. As discussed above, the Amended Complaint does not contain any factual allegations from which to infer that the defendants are state actors as contemplated by section 1983.

A private citizen can be liable for state action where the "private party is a willful participant in joint action

with the State or its agents." Id. at 1453 (internal quotations omitted). The focus of the inquiry is "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." Id. The state and private actors "must share a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action." Id. at 1455. There are no factual allegations to support a reasonable inference that the defendants shared a specific goal with state officials to violate the plaintiff's constitutional rights by engaging in a particular [*34] course of action.

### C. Claim Four: Fraud

Claim Four asserts a state law fraud claim against defendants Ocwen, FHLMC, and Vaden. *Amended Complaint*, pp. 11-12. The defendants argue that the claim fails because it is barred by the statute of limitation, and the plaintiffs do not allege a plausible claim for fraud. *Ocwen Motion*, pp. 33-34; *Vaden Motion*, pp. 14, 16-17.

A claim for fraud "shall be commenced within three years after the cause of action accrues, and not thereafter." C.R.S. § 13-80-101(1)(c). "A cause of action for fraud, misrepresentation, concealment, or deceit shall be considered to accrue on the date such fraud, misrepresentation, concealment, or deceit is discovered or should have been discovered by the exercise of reasonable diligence." C.R.S. § 13-80-108(3).

The allegations of Claim Four are confusing. The plaintiffs allege that the defendants falsely represented the fact that Ocwen Loan Servicing was foreclosing as Servicer for CSFB and that CSFB was the holder of the Note. They claim that this fact is material because under Colorado law, the holder of the Note has the right to foreclose without being required to prove that it is the real party in interest. The plaintiffs allege [*35] that on December 21, 2009, they received a letter from Ocwen identifying FHLMC as the creditor on their debt; "Vaden initiated foreclosure proceedings on behalf of FHLMC hiding behind Ocwen on or about July 30, 2010"; the defendants knew the representation was false; and it was intended for the plaintiffs to hire an attorney and fight the foreclosure. The plaintiffs "rightfully" relied on the misrepresentations and fought the foreclosure, but lost their Property. *Amended Complaint*, pp. 13-14.

Despite these jumbled allegations, it is clearly alleged that the plaintiffs knew of the misrepresentation (that CSFB was the holder of the Note )when it was made "on or about July 30, 2010" because they were notified in 2009 that FHLMC was the creditor on their debt. The plaintiffs did not initiate this action until September 16, 2013, more that three years after they were aware of the misrepresentation. Consequently, Claim Four is barred by the statute of limitation.

In addition, under Colorado law, "a plaintiff seeking to prevail on a fraud claim must establish five elements: (1) that the defendant made a false representation of a material fact; (2) that the one making the representation knew [*36] it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff." Bristol Bay Productions, LLC v. Lampack, 312 P.3d 1155, 1160, 2013 CO 60 (Colo. 2013).

The plaintiffs have failed to allege a claim for fraud. Even assuming that the defendants knowingly misrepresented the identity of the holder of the Note, the plaintiffs' damages (the loss of their Property) stem from the state court's finding of a default, not from the fact that the plaintiffs relied on the alleged misrepresentation and hired attorneys to fight the foreclosure in court. The motions should be granted insofar as it seeks dismissal of Claim Four.

### D. Claims Five and Six: FDCPA and CFDCPA

Claim Five asserts that defendants Ocwen and Vaden violated the Fair Debt Collection Practices Act ("FDCPA") and Claim Six asserts that they violated the Colorado Fair Debt Collection Practices Act ("CFDCPA"). *Amended Complaint*, pp. 13-16. The plaintiffs allege that the defendants filed forged documents "such as the endorsement on the Promissory Note, forging the [Special Warranty [*37] Deed] and the Quitclaim Deed." Id, at pp. 13, 15. The plaintiffs refer to letters sent by Ocwen to the plaintiffs in 2009 and 2010 and a letter sent by Vaden dated July 20, 2010, and they allege that the defendants "unlawfully inflated the filing fees . . . and the accrued interest" at the Rule 120 Hearing. Id.

The defendants assert that Claims Five and Six are barred by the statute of limitation. *Ocwen Motion*, p. 29; *Vaden Motion*, pp. 11-12. The FDCPA provides that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United

States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Similarly, the CFDCPA provides that "[a]n action to enforce any liability created by the provisions of this article may be brought in any court of competent jurisdiction within one year from the date on which the violation occurs." C.R.S. § 12-14-113(4).

The latest of the alleged violations occurred on February 4, 2011, when Ocwen executed the Quit Claim Deed. The plaintiffs filed this action on September 16, 2013--more than [*38] one year after the alleged violations occurred. The Motions should be granted to the extent they seek dismissal of Claims Five and Six as barred by the statute of limitation.

**E. Claim Seven**

In Claim Seven, the plaintiffs allege that defendants Ocwen, FHLMC, MERS, and Vaden violated the Colorado Consumer Protection Act ("CCPA"). *Amended Complaint*, pp. 17-18. The plaintiffs allege that Ocwen and Vaden violated the CCPA by filing forged documents (the Note, the Special Warranty Deed, and the Quitclaim Deed) and inflating the fees and accrued interest during the foreclosure process. *Amended Complaint*, p. 17. They summarily allege that "[o]ver a thousand Colorado homeowners have lost their homes in foreclosure on the basis of such fabricated/forged documents and inflated fees." Id. They further allege that FHLMC violated the CCPA by using its MERS number to transfer rights to the Note and Deed of Trust to itself, and MERS "as an electronic database of its size is a facade facilitating fraud throughout the State of Colorado and the nation as it does not supervise its members' use and abuse of their system." Id. at pp. 17-18.

To succeed on a claim under the CCPA, a plaintiff must establish "(1) [*39] that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." Hall v. Walter, 969 P.2d 224, 235 (Colo. 1998).

"[A]llegations of deceptive trade practices under the [CCPA] are subject to Rule 9(b)'s requirement of particularity." Duran v. Clover Club Foods Co., 616 F. Supp. 790, 793 (D. Colo. 1985). Rule 9(b), Fed. R. Civ. P., requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." These claims must "set forth the identity of the party making the false statements, that is, which statements were allegedly made by whom" in order to "give notice to the defendants of the fraudulent statements for which they are alleged to be responsible." Fed.R.Civ.P. 9(b); Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1253 (10th Cir. 1997); [*40] D.R. Horton, Inc. v. The Travelers Indemnity Co. of America, No. 10-cv-02826-WJM-KMT, 2012 U.S. Dist. LEXIS 19293, 2012 WL 527204 at *3 (D. Colo. February 16, 2012).

Hall's third requirement is dispositive here. In Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142 (Colo. 2003), the Colorado Supreme Court stated that there are at least three factors to consider when determining if a challenged practice impacts the public under the CCPA: "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." Id., at 149. "The CCPA can not be used to remedy a purely private wrong." Crowe v. Tull, 126 P.3d 196, 208 (Colo. 2006).

The plaintiffs allegations are directed at the defendants' practices insofar as the plaintiffs were impacted personally; the plaintiffs provide only vague and conclusory allegations regarding the defendants' impact on the public. Accordingly, the motions should be granted insofar as they seek dismissal of Claim Seven.

**F. [*41] Claims Eight, Nine, Ten, and Eleven**

Claim Eight asserts negligence per se against defendants Ocwen, FHLMC, MERS, Megastar, and Vaden. The claim challenges the foreclosure; the Quitclaim Deed conveying the Property from Ocwen Loan Servicing "as Servicer for CSFB" to Ocwen Loan Servicing, LLC; and the Special Warranty Deed conveying the Property from Ocwen Loan Servicing, LLC, to FHLMC. Claim Nine asserts Intentional Infliction of Emotional Distress against Ocwen, FHLMC,

MERS, Megastar, and Vaden based on the foreclosure of the Property. Claim Ten asserts negligence against Ocwen, FHLMC, MERS, Megastar, Yvonne Smith, and Gordon Smith based on the foreclosure and subsequent conveyance of the Property to FHLMC. *Amended Complaint*, pp. 19-24. Claim Eleven asserts violation of "Colo. Rev. Stat. §§ 38-35-109(3), 201 et seq. (Spurious Lien and Document)" against Ocwen, FHLMC, MERS, Megastar, and Vaden based on the foreclosure. Id. at pp. 25. The defendants assert that Claims Eight, Nine, Ten, and Eleven are barred by the statute of limitation. *Ocwen Motion*, p. 29; *Vaden Motion*, p. 12.

C.R.S. § 13-80-102 provides:

> (1) The following civil actions, regardless of the theory upon which suit is brought, [*42] or against whom suit is brought, shall be commenced within two years after the cause of action accrues, and not thereafter:
>
>> (a) Tort actions, including but not limited to actions for negligence, trespass, malicious abuse of process, malicious prosecution, outrageous conduct, interference with relationships, and tortious breach of contract; except that this paragraph (a) does not apply to any tort action arising out of the use or operation of a motor vehicle as set forth in section 13-80-101(1)(n);
>
> * * *
>
>> (i) All other actions of every kind for which no other period of limitation is provided . . . .

C.R.S. § 13-80-102(1)(a) and (i).

"[A] cause of action for injury to person, property, reputation, possession, relationship, or status shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." § 13-80-108(1).

The actions at issue in Claims Eight, Nine, Ten, and Eleven culminated with the conveyance of the Property to FHLMC. The plaintiffs knew, or by the exercise of reasonable diligence should have known, of those actions on or before March 9, 2011, when FHLMC commenced the Initial FED Action against them. [*43] The plaintiffs did not file this action until September 16, 2013--almost six months after the statute of limitation had expired. The Motions should be granted insofar as they seek dismissal of Claims Eight, Nine, Ten, and Eleven as barred by the statute of limitation.

In addition, the plaintiffs fail to allege sufficient factual allegations to state plausible claims for relief. Negligence and negligence per se are established by a showing that the defendant's conduct was such that it breached a duty to meet a certain standard of care." E.g., *Lui v. Barnhart*, 987 P.2d 942, 945 (Colo. App. 1999). The elements of a claim for intentional infliction of emotional distress are "(1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the defendant's conduct caused the plaintiff to suffer severe emotional distress." *English v. Griffith*, 99 P.3d 90, 93 (Colo. App. 2004) (citing *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994); *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999)). The plaintiffs do not allege any specific or coherent [*44] facts--and the record does not contain any--from which to infer that the defendants owed a them a legal duty and breached that duty or that the defendants engaged in extreme or outrageous conduct.

Nor do the plaintiffs allege sufficient facts to state a plausible claim under C.R.S. § 38-35-109(3), which provides:

> Any person who offers to have recorded or filed in the office of the county clerk and recorder any document purporting to convey, encumber, create a lien against, or otherwise affect the title to real property, knowing or having a reason to know that such document is forged or groundless, contains a material misstatement or false

claim, or is otherwise invalid, shall be liable to the owner of such real property for the sum of not less than one thousand dollars or for actual damages caused thereby, whichever is greater, together with reasonable attorney fees.

The plaintiffs allege that by filing forged documents, the defendants violated section 109(3) "by purporting to convey, encumber, create a lien and otherwise affect the title of the Plaintiffs' Property. [The defendants] knew and/or had reason to know that the false documents were forged and groundless, and contained material [*45] misstatements and false claims, or were otherwise invalid." *Amended Complaint*, p. 25. However, this "formulaic recitation of the elements of a cause of action" is not sufficient to state a claim for relief. Twombly, 550 U.S. at 555.

### G. Defendant MERSCORP

The plaintiffs do not assert any factual allegations against defendant MERSCORP. Accordingly, MERSCORP should be dismissed from this action.

### H. The Initial Complaint

The plaintiffs complain that they "were limited to the confines of the Magistrate Judge's Order to limit their [amended] complaint to two pages per cause of action as to all defendants," *Vaden Response*, p. 8, and that their original complaint contained the details necessary to overcome the defendants' Motions. *Ocwen Response*, p. 6.

The plaintiffs filed their initial Complaint on September 16, 2013 [Doc. #1]. On October 9, 2013, I struck the Complaint [Doc. #18] because it failed to comply with the pleading requirements of Fed.R.Civ.P. 8. In doing so, I stated:

> The Complaint is 58 pages long. It contains 29 pages of factual allegations, followed by 12 claims. The plaintiffs do not clearly identify which claims are asserted against which defendants, and they repeatedly refer collectively [*46] to "the defendants." Many of the claims lack specific factual allegations. Thus, it is necessary to dissect the 29 pages of factual allegations in order to attempt to discern which facts apply to which claim and which claim applies to which defendant(s). In addition, the Complaint contains numerous superfluous facts; legal argument; immaterial and impertinent statements; and *ad hominem* attacks against defendants--none of which are appropriately included in a complaint.
>
> The Complaint fails to provide notice of the plaintiffs' causes of action as required by Rule 8. Accordingly, the Complaint is stricken, and the plaintiffs shall submit an amended complaint which complies with the Federal Rules of Civil Procedure, the local rules of this court, and this order.
>
> The amended complaint must be submitted on the court's form and shall be titled "Amended Complaint." The background statement shall briefly summarize the plaintiff's case and shall not exceed one double-spaced typewritten page. Each claim shall be numbered and shall be stated separately. Each claim shall state the legal basis for the claim; shall identify which defendant(s) the claim is brought against; and shall allege facts sufficient [*47] to state a claim for relief as to each of those defendants. Each claim shall not exceed two typewritten pages, double-spaced. The Complaint shall not contain superfluous facts; legal argument; immaterial and impertinent statements; or *ad hominem* attacks against defendants.

The plaintiffs simply were required to plead in accordance with Rule 8, Fed.R.Civ.P.

### IV. CONCLUSION

I respectfully RECOMMEND:[11]

---

[11] Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections

waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

(1) Defendant Vaden Law Firm LLC's [*48] Motion to Dismiss Pursuant to Fed. R. Civ. P. Rules 12(b)(1), 12(b)(5), and 41(b) [Doc. #45] be GRANTED;

(2) The Ocwen Defendants' Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [Doc. #67] be GRANTED;

(3) The plaintiffs' request for declaratory and injunctive relief "dismissing and voiding the foreclosure of Plaintiffs' property" and "declaring the Mortgage, Promissory Note and other related instruments . . . void and unenforceable" and their challenge to the constitutionality of Rule 120 and state foreclosure statutes be DISMISSED WITHOUT PREJUDICE pursuant to the Younger abstention doctrine; and

(3) The remaining claims against Vaden Law Firm LLC; Ocwen Loan Servicing LLC; Federal Home Loan Mortgage Corporation; Mortgage Electronic Registration Systems, Inc.; and MERSCORP Holdings, Inc., be DISMISSED WITH PREJUDICE.

Dated June 16, 2014.

BY THE COURT:

/s/ Boyd N. Boland

United States Magistrate Judge